

FOX ROTHSCHILD LLP
Attorneys for Plaintiff
100 Park Avenue, 15th Floor
New York, New York 10017
(212) 878-7900
(fax)(212) 692-0940
Richard B. Cohen (RC 5103)
Daniel A. Schnapp (DS 3484)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SEPANG AIR EXECUTIVE JET SDN BHD,
F/K/A FABLE SDN BHD,

                           Plaintiff,

    -against-

HSH NORDBANK AG,
and AMENTUM CAPITAL, LTD.,

                         Defendants.
------------------------------------------------------------x

**JUDGE CHIN**

**'07 CIV 9810**

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff, Sepang Air Executive Jet Sdn Bhd f/k/a Fable Famous Sdn Bhd ("Sepang"), by its attorneys, Fox Rothschild LLP, for its complaint against defendants HSH Nordbank AG and Amentum Capital, Ltd. (collectively, "defendants"), alleges upon knowledge with respect to its own acts and upon information and belief with respect to the acts of others, as follows:

### NATURE OF THE CASE

      1.    This case seeks to recover the sum of at least $2,000,000.00, plus interest, wrongfully withheld by defendants.

      2.    The parties contemplated the eventual sale of four Bombardier CRJ-200ER Aircraft (hereinafter the "aircraft") by defendants to Sepang. The parties agreed that Sepang would tender to defendants the sum of $2,000,000.00 as a deposit towards a final sales price of

y

$30,000,000.00. The deposit was tendered in order to temporarily remove the aircraft from the market, and to permit Sepang to conduct an inspection of the aircraft.

3. Defendants drafted, and the parties executed, a Letter of Intent (the "LOI"), dated June 5, 2007.

4. The parties had agreed, prior to and at the time of the execution of the LOI, that the deposit would be refunded to Sepang in the event that the results of the inspection revealed that the aircraft were not in the condition as represented by defendants, or a condition satisfactory to Sepang. Thus, Sepang would have, in defendant's words, the right to "walk away."

5. The inspection by Sepang revealed that the aircraft had many defects and discrepancies from the specifications previously delivered to Sepang by defendants. As provided in the LOI, Sepang requested that defendants correct the deficiencies and discrepancies noted by Sepang. Defendants failed to properly address these deficiencies and discrepancies.

6. Pursuant to the parties' agreement, Sepang ultimately elected to terminate the transaction and sought a refund of its deposit. Defendants have, without justification, failed and refused to return Sepang's deposit.

## JURISDICTION AND VENUE

7. Sepang invokes this Court's subject matter jurisdiction pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Pursuant to 28 U.S.C. §1391(a), venue is proper in this district because Defendant HSH Nordbank AG ("HSH") maintains an office for the transaction of business located at 230 Park Avenue, New York, New York, and Defendant Amentum Capital, Ltd. ("Amentum") does

business in the State of New York as HSH's in-house aviation finance department and/or transacted business in the State of New York as HSH's agent in the negotiation and execution of the LOI, and/or defendants are subject to personal jurisdiction in this district at the time this action is commenced.

## THE PARTIES

9. Sepang is a Malaysian corporation headquartered at Suite 16-03, 16th Floor, Menara SPK, 22 Jalan Sultan Ismall, 50250 Kuala Lumpur, Malaysia.

10. HSH is a foreign business entity with an office for the transaction of business located at 230 Park Avenue, New York, New York.

11. Amentum is a foreign business entity which does business in the State of New York as defendant HSH's in-house aviation finance department and/or transacted business as its agent in the negotiation and execution of the LOI.

## FACTS COMMON TO ALL CAUSES OF ACTION

12. In or about Spring, 2007, Sepang entered into discussions with defendants about the possibility of purchasing the aircraft from defendants.

13. Defendants informed Sepang that they would require from Sepang the deposit of $500,000.00 for each aircraft (a total of $2,000,000.00), and the execution of the LOI, for defendants to temporarily remove the aircraft from the market, and to permit Sepang to conduct an inspection of the aircraft.

14. The parties agreed that the deposit would be refundable if, after inspection by Sepang: (a) Sepang terminated the transaction, or (b) if the aircraft were determined by Sepang to be in a materially different condition that as represented by defendants, and defendants did not make the required repairs and correct the discrepancies noted by Sepang.

15. Indeed, on or about May 15, 2007, Sepang informed defendants that the LOI which would accompany the tender of a deposit as large as $2,000,000.00 would have to provide that the deposit:

> would be Non-Refundable to remove the aircraft from the market and complete a Due Diligence process on each aircraft including pre buy inspection and operational demonstrations (Ground Only). <u>Should the aircraft not fundamentally match the specifications as represented or should they not be in a similar condition the deposit would become Refundable upon written notice of the Deficiencies as discovered in the DD process.</u> Once the purchaser is satisfied that the specifications as represented match the physical condition of the aircraft the transaction will move towards the sale/purchase phase of documentation and be scheduled for a closing (emphasis added).

16. Defendants explicitly agreed to this condition, and similarly advised Sepang that an LOI would be executed which would "give [Sepang] the possibility to walk away if the results of the inspection are not positive."

17. Defendants then drafted and presented the LOI to Sepang. The LOI was not reviewed by counsel.

18. On or about June 3, 2007, Sepang tendered to defendants the executed LOI, and the $2,000,000.00 deposit, which was deposited into defendants' bank account on or about June 6, 2007. Defendants countersigned the LOI. <u>See</u> annexed Exhibit A.

19. Defendants thereafter informed Sepang that its bid was accepted, which temporarily took the aircraft off the market and permitted Sepang to inspect the aircraft to determine if it wanted to go forward with the transaction.

## THE LETTER OF INTENT

20. Section 6.1 of the LOI provided that at the delivery date, each aircraft shall be in conformity to the conditions as outlined in the specifications provided by defendants to Sepang

21. Section 7.2 of the LOI provided that on the delivery date, defendants would deliver the aircraft to Sepang "in the agreed delivery condition."

22. Section 6.2 of the LOI provided that at the delivery date, each aircraft "shall be serviceable with a bridging document to the current MRB document and ready for the ferry within North America" and in "an airworthy condition for ferry permit from DAR.

23. Section 7.1 of the LOI provided that Sepang be permitted to inspect the aircraft within 3 days, but not later than June 8, 2007, "to allow buyer to determine that the Aircraft is in a condition as specified in Article 6 hereof." After the inspection, Sepang had one day to submit "each claim of discrepancy from the condition of the Aircraft or Aircraft records from the agreed delivery condition."

24. Section 7.1 of the LOI provided that Sepang, after inspection, had the right to: (a) terminate the transaction, in which case defendants were obligated to immediately refund the Deposit to Sepang; (b) accept the aircraft on an "as is, where is" basis; or (c) enter into a modification with defendants regarding price and /or delivery condition for the purpose of going forward.

25. Section 7.1 of the LOI provided that, upon receipt of the notice of discrepancies from Sepang, defendants were obligated to countersign the notice and deliver the notice to Sepang "within three days after completion of the inspection."

26.  Section 11.1 of the LOI provided that it was the intent of all parties that a sales agreement would be executed incorporating, among other things, the terms of the LOI, and that the parties would "negotiate in good faith towards the prompt execution" of such agreement.

### SEPANG'S INSPECTION OF THE AIRCRAFT

27.  Upon its inspection of the aircraft, Sepang discovered numerous material discrepancies between the actual condition of the aircraft, and their condition as represented by defendants, and the condition required for Sepang to execute a final sales agreement.

28.  Although Sepang retained the right to immediately demand a return of its deposit, pursuant to Section 7.1 of the LOI, on or about June 11, 2007, Sepang, nonetheless, in a good faith effort to move forward with the transaction, delivered to defendants an Inspection and Delivery document "with its two pages of issues which were discovered during the inspection phase." Sepang asked defendants to "[p]lease advise the Purchaser as to how each of these individual aspects will be addressed."

29.  The Inspection and Delivery document set forth the following discrepancies and deficiencies in the condition of the aircraft, or, under the language of Section 7.1 of the LOI, "each claim of discrepancy from the condition of the Aircraft or Aircraft records from the agreed delivery condition":

**General Open Issues applicable to the Proposed Purchased Fleet**

The current CRJ specification indicates that the aircraft are CRJ 200 ER, need to verify ER status.

The current CRJ specification sheet indicates that the aircraft are "FAR 121 compliant".

Bridging documentation is not currently available to bring all aircraft in alignment with the Current MRB Document. In accordance with the terms this will provided at a later date but as of the inspection time is currently unavailable.

Airworthiness Directives since the time of removal from scheduled flight operations need to be addressed.

All AD's need correct compliance documentation. Compliance and replacement parts for terminating action of AD 2006-12-21/ss98-20-01 need to be delivered to Purchaser if not already installed by the Seller.

All Aircraft appear to have exceeded the limitations of AD2007-03-19 this AD appears due.

Calendar associated items have elapsed and are un-airworthy presently. All times need to be updated as of current, hours, cycles, calendar requirements.

TCAS and EGPWS do not appear to have current software installed.

RVSM compliance is in question. Needs to be clarified completely as to current and specific status for all four aircraft.

Windows overall show signs of seal deterioration (cabin & cockpits).

Documentation needed to substantiate time controlled and life limited components inclusive of all engines, landing gear and all LLP's IAW FAR121, 14 CFR.

All Aircraft need to be presented as "clean by industry standards".

Water accumulating in entryway thresholds on multiple aircraft, need action.

Fuel filters will need to be replaced prior to flight.

Fuel system will need Millipore sample sent for lab analysis prior to flight and action taken as to lab results (bio bore treatment or drain and sump).

Cannot find complete map of repaired and un-repaired skin and structure damage.

**Specific Issues with Individual Aircraft**

**S/N7307      N636BR**

Aircraft is exhibiting signs of surface corrosion.

Nbr. 4 tire worn below limits.

Scab patches in canted bulkhead and Rt. pylon area require documentation.

**S/N7308       N637BR**

TCAS is inoperative in accordance with DMI log.

Paint blistering on CVR and DFDR covers, needs investigation.

Various ceiling panels falling down, need to be re-secured.

The LMG has been replaced from original, need to validate LLP trace.

**S/N7340       N640BR**

Nbr. 1 engine C-1 shows sign of minor FOD.

Aft cargo compartments has one light cover missing.

**S/N7349       N641BR**

Appearance of crack propagating from screw hole/scab patch above wing.

Lt wing inspection light fixture incorrectly installed.

Possible corrosion, aft belly skins just aft of wheel well area.

Rt. aft fuse paint blistering from suspected hydraulic leak.

Rt. & Lt. vertical stab shows signs of fungus growth.

The LMG and RMG have been replaced from original and needs LLP trace verified.

30.    Sepang was under no obligation to move forward with the sale of the aircraft unless and until these issues contained in the list of discrepancies were addressed to Sepang's satisfaction, and Sepang retained the right to demand the return of its deposit unless and until these issues were so addressed.

31. In contravention of Section 7.1 of the LOI, defendants failed to deliver a countersigned acceptance notice of this list of discrepancies.

32. Although the LOI was silent as to the parties' respective rights and obligations under this circumstance, the intent of the parties evidenced by their representations prior to and at the time of the execution of the LOI, the other explicit provisions of the LOI, as well industry custom, mandated that defendants' failure permitted Sepang to rightfully demand a return of its deposit.

33. Moreover, defendants failed and refused to remedy or act in any meaningful way responsive to Sepang's list of discrepancies, and, indeed, made no good faith attempt to remedy these defects or put the aircraft into deliverable condition.

34. With the approval of defendants, Sepang inspected the aircraft again in August 2007. This inspection revealed that the discrepancies and defects notes at the first inspection had not been corrected or remedied, and additional material defects were discovered.

35. Accordingly, Sepang terminated the transaction on or about August 24, 2007, and on or about August 31, 2007, made due demand upon defendants for the immediate return of its deposit.

36. Defendants wrongfully failed and refused to return the deposit.

37. Defendants owe Sepang the amount of not less than $2,000,000.00, plus interest thereon from June 3, 2007.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

38. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 37 as if set forth in full herein.

39. The LOI constitutes a valid and binding contract between the parties.

40. Sepang complied with all of its obligations pursuant to the LOI.

41. As set forth in detail above, defendants breached the LOI by failing to deliver to Sepang a countersigned acceptance notice, in contravention of Section 7.1; by failing and refusing to correct and remedy the defects, deficiencies and discrepancies in the aircraft, or placing the aircraft into deliverable condition, such defects, deficiencies and discrepancies as more revealed in Sepang's inspection and communicated by Sepang to defendants; by failing and refusing to exercise good faith in attempting to put the aircraft into airworthy and deliverable condition, or correcting or remedying such defects, deficiencies and discrepancies; and by failing and refusing to return the deposit to Sepang.

42. As a result, Sepang has been damaged in an amount of not less than $2,000,000.00, plus interest thereon from June 3, 2007.

## SECOND CLAIM FOR RELIEF
(Breach of Preliminary Commitment)

43. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 42 as if set forth in full herein.

44. The parties manifested their clear intent to enter into a final sale agreement.

45. The parties were bound to make a good faith effort to negotiate any open terms and enter into a final sale agreement.

46. Defendants breached their obligation to negotiate a final sale agreement in good

faith.

47. As a result, Sepang has been damaged thereby in an amount of not less than $2,000,000.00, plus interest thereon from June 3, 2007.

### THIRD CLAIM FOR RELIEF
(Breach of Preliminary Agreement)

48. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 47 as if set forth in full herein, and pleads this cause of action in the alternative.

49. On or about June 18, 2007, defendants delivered a proposed final Sale Agreement to Sepang.

50. The proposed final Sale Agreement contemplated that the deposit would be refunded to Sepang in the event that defendants failed to perform certain closing conditions.

51. Sepang has fully performed all of the terms of the proposed final Sale Agreement. However, defendants have failed to perform the agreed upon terms, which requires a refund of the deposit.

52. The proposed final Sale Agreement does not contain any items that contemplated further negotiation between the parties, and lacks only the signatures of the parties.

53. The proposed final Sale Agreement did not reserve the right not to be bound in the absence of the signatures of the parties.

54. Because the proposed final Sale Agreement lacked only the signatures of the parties, and the parties intended to be bound by the proposed final Sale Agreement, as evidenced by the defendants acting in accordance with its material terms, it is fully enforceable as against defendants.

55. Defendants have breached the preliminary agreement.

56. As a result, Sepang has been damaged thereby in an amount of not less than

$2,000,000.00, plus interest thereon from June 3, 2007.

## FOURTH CLAIM FOR RELIEF
(Breach of Implied Covenant of Good Faith and Fair Dealing)

57. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 56 as if set forth in full herein.

58. The LOI includes the covenant of good faith and fair dealing that is implied in all contracts.

59. Defendants have acted in bad faith as part of an illegal scheme to deny Sepang the benefit of its bargain.

60. As a result, Sepang has been damaged thereby in an amount of not less than $2,000,000.00, plus interest thereon from June 3, 2007.

## FIFTH CLAIM FOR RELIEF
(Unjust Enrichment)

61. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 60 as if set forth in full herein.

62. Defendants directed Sepang to tender the deposit to defendants.

63. Defendants have been unjustly enriched in the amount of $2,000,000.00.

64. Defendants' unjust enrichment is at the expense of Sepang, and the circumstance of this enrichment is such that it would be unjust, in equity and in good conscience, to permit defendants to retain the benefit of retaining the deposit.

65. As a result, Sepang is entitled to recover the value of the benefit conferred upon defendants, in an amount of not less than $2,000,000.00, plus interest thereon from June 3, 2007.

### SIXTH CLAIM FOR RELIEF
(Breach of Contract pursuant to New York U.C.C. Section 2-711)

66. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 65 as if set forth in full herein.

67. The LOI constitutes a valid and binding contract between the parties for the sale of goods pursuant to Article 2 of the Uniform Commercial Code.

68. Defendants failed to return the deposit to Sepang, despite due demand.

69. Defendants breached the LOI.

70. As a result, Sepang has been damaged thereby in an amount of not less than $2,000,000.00, plus interest thereon from June 3, 2007.

### SEVENTH CLAIM FOR RELIEF
(Anticipatory Repudiation pursuant to New York U.C.C. Section 2-610)

71. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 70 as if set forth in full herein.

72. The LOI constitutes a valid and binding contract between the parties for the sale of goods pursuant to Article 2 of the Uniform Commercial Code.

73. Sepang complied with all of its obligations pursuant to the LOI.

74. Defendants repudiated the LOI by failing to tender a countersigned "Acceptance Notice" to Sepang and/or by failing to return the deposit to Sepang.

75. As a result, Sepang has been damaged in the amount to be determined at trial, but in no event less than $2,000,000.00, plus interest thereon from June 3, 2007.

## EIGHTH CLAIM FOR RELIEF
(Conversion)

76. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 75 as if set forth in full herein.

77. Defendants directed Sepang to tender the deposit to defendants.

78. Defendants have converted at least $2,000,000.00 of plaintiff Sepang's monies and have retained same despite due demand for their return.

79. As a result, Sepang has been damaged in the amount to be determined at trial, but in no event less than $2,000,000.00, plus interest thereon from June 3, 2007.

80. Because the actions of defendants were intentional and meant and intended to harm plaintiff in its business operations, plaintiff should also be awarded punitive damages in an amount in excess of $20,000,000.00.

## NINTH CLAIM FOR RELIEF
(Declaratory Judgment)

81. Plaintiff repeats and realleges the allegations contained in paragraph 1 through 80 as if set forth in full herein.

82. Sepang demanded that defendants refund the deposit.

83. Defendants have refused to return the deposit.

84. In the alternative, the LOI was not binding upon the parties.

85. As a result, there is an actual case and controversy between the parties regarding whether Sepang is entitled to a refund of its Deposit.

86. Sepang has no adequate remedy at law.

87. Accordingly, Sepang seeks a declaration that it is entitled to: (a) a refund of the deposit; or (b) in the alternative, a declaration that the LOI was not binding on either party and therefore that Sepang is entitled to a return of the deposit.

88. Pursuant to Rule 57 of the Federal Rules of Civil Procedure, Sepang is entitled to a speedy hearing on its claim for a declaratory judgment.

WHEREFORE, Sepang requests judgment against defendants as follows:

a. On the first, second, third, fourth, fifth, sixth, and seventh causes of action, compensatory damages in the sum of at least $2,000,000.00, plus interest thereon from June 3, 2007, and the attorney's fees and costs of this action;

b. On the eighth cause of action, compensatory damages in the sum of at least $2,000,000.00, plus interest thereon from June 3, 2007, and the attorney's fees and costs of this action, and punitive damages in excess of $20,000,000.00;

c. On the ninth cause of action, a declaration that Sepang is entitled to: (a)(i) revoke its notice of acceptance, in accordance with N.Y.U.C.C. Section 2-608; (a)(ii) a refund of the deposit; or (b) in the alternative, a declaration that the LOI was not binding on either party and Sepang is entitled to a return of the deposit; and

d. Such other and further relief as the Court deems just and proper, including costs and disbursements.

Dated: New York, New York
October 31, 2007

FOX ROTHSCHILD LLP
Attorneys for Plaintiff

By: _____
Richard B. Cohen (RC 5103)
Daniel A. Schnapp (DS 3484)
100 Park Avenue, 15th Floor
New York, New York 10017
(212) 878-7900
(fax) (212) 692-0940